# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 9, 2012

No. 10-41087

Lyle W. Cayce
Clerk

CHAD SPLAWN,

Petitioner - Appellant

v.

RICK THALER, Director, Texas Department of Criminal Justice,
Correctional Institutions Division,

Respondent - Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:07-CV-292

Before REAVLEY, DENNIS, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-41087

Petitioner-Appellant Chad Splawn, a Texas state inmate, appeals the denial of his federal petition for a writ of habeas corpus.  Because the state court's denial of Petitioner's *Batson* challenge was not contrary to or an unreasonable application of clearly established federal law, we AFFIRM.

## FACTUAL BACKGROUND

Petitioner-Appellant Chad Splawn ("Petitioner") was charged with aggravated sexual assault of a child and indecency with a child.  During voir dire, the prosecutor used seven out of her ten allowed peremptory strikes to remove males from the panel.  Defense counsel objected to the prosecutor's strikes on the ground that they violated Petitioner's right to be tried by "a jury whose members are selected pursuant to nondiscriminatory criteria" under *Batson v. Kentucky*, 476 U.S. 79, 85–86 (1986).  In response, the trial judge incorrectly concluded that males are not a cognizable group under *Batson* and denied Petitioner's challenges.  However, the judge did allow the prosecutor an opportunity to state the reasons for her peremptory strikes to preserve the record for appeal.

The prosecutor used the only strike at issue here to eliminate Juror Steven Edward Philip ("Juror Philip") from the panel.  In explaining her decision to remove Juror Philip from the panel, the prosecutor told the court: "Stephen Edward Philip, I really can't recall my reasons on that one.  I struck him from the previous case last week and basically from that same feeling, although I don't have my records on that from last week."  The judge said "[a]ll right" and proceeded to empanel the jury.  The resulting jury consisted of seven women, five men, and two female alternates.  Petitioner was ultimately found guilty on both counts, and, at sentencing, the jury noted that Petitioner had previously been convicted of indecency with a child  and recommended that he serve a life sentence.

No. 10-41087

After the Texas Court of Appeals affirmed Petitioner's conviction and sentence, *Splawn v. State*, 160 S.W.3d 103, 115 (Tex. Ct. App. 2005), Petitioner filed an application in state court for a writ of habeas corpus. The Court of Criminal Appeals denied the application without written order. Petitioner then filed another habeas petition in the United States District Court for the Eastern District of Texas that was also denied. Petitioner timely appeals.

## STANDARD OF REVIEW

In an appeal from a denial of habeas relief, we review a district court's findings of fact for clear error and its conclusions of law *de novo*. *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001). However, Petitioner's federal habeas claim is also governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. Under AEDPA's heightened standard of review, a federal court may not grant habeas relief unless the state court's adjudication on the merits "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).[1]

A state court's adjudication runs afoul of AEDPA's heightened standard when it "'identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case,' or where it 'extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" *LaCaze v. Warden La. Corr.*

---

[1] Petitioner has only alleged that the state court's decision violated 28 U.S.C. § 2254(d)(1). As a result, § 2254(d)(2) is not at issue.

No. 10-41087

*Inst. for Women*, 645 F.3d 728, 734 (5th Cir. 2011) (alterations in original) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)) (internal citation omitted).

Thus, "[a]bsent a direct conflict with Supreme Court authority, habeas relief is available only if the state court decision is factually or legally unreasonable in light of the evidence present[ed] in the state court proceeding." *Moody v. Quarterman*, 476 F.3d 260, 266 (5th Cir. 2007). Moreover, "an unreasonable application of federal law is not the equivalent of an incorrect application of federal law." *Id.* A federal court may not issue a writ of habeas corpus where the state court's application of federal law is merely incorrect; instead, the application of federal law must also be unreasonable. *Id.* This standard reinforces the role of habeas as a "'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)).

## DISCUSSION

Petitioner claims that the Texas appellate court's denial of his *Batson* challenge was unreasonable in light of *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 146 (1994) (holding that males are a cognizable group for the purposes of a *Batson* challenge). Although the trial court clearly erred in refusing to apply *J.E.B.*, that alone does not warrant a grant of habeas relief. *See Early v. Packer*, 537 U.S. 3, 8 (2002) (finding that a reviewing court may defer to a trial court that has failed to acknowledge relevant Supreme Court precedent "so long as neither the reasoning nor the result of the state-court decision contradicts" that precedent). As such, we turn to the appellate court's analysis of Petitioner's *Batson* challenge to determine whether the court unreasonably applied federal law.

No. 10-41087

In *Batson*, the Court delineated a three-step analysis to be used by trial courts in evaluating a defendant's claim that the prosecutor used a peremptory strike in a discriminatory manner. 476 U.S. 96–98. Under this test:

> (1) a defendant must make a prima facie showing that the prosecutor exercised his peremptory challenges on the basis of [membership in a protected group];
> (2) the burden then shifts to the prosecutor to articulate a [gender]-neutral reason for striking the juror in question; and
> (3) the trial court must determine whether the defendant carried his burden of proving purposeful discrimination.

*Moody*, 476 F.3d at 266 (citing *Batson*, 476 U.S. at 96–98). The "'shifting burden' described in [this] framework is one of production only." *Soria v. Johnson*, 207 F.3d 232, 239 (5th Cir. 2000) (citing *United States v. Bentley-Smith*, 2 F.3d 1368, 1373 (5th Cir. 1993)). The burden of persuasion, on the other hand, lies at all times with the party asserting the *Batson* challenge. *Id.* At voir dire, the prosecutor voluntarily offered gender-neutral explanations for her peremptory strikes, rendering moot the first prong of the *Batson* analysis – the question of whether the defendant established a prima facie case. *See United States v. Williams*, 264 F.3d 561, 571 (5th Cir. 2008) ("Where, as here, the prosecutor tenders a [gender]-neutral explanation for his peremptory strikes, the question of Defendant's prima facie case is rendered moot and our review is limited to the second and third steps of the *Batson* analysis.").

Since Petitioner was not required to make a prima facie showing of discrimination, we turn to the second prong. Once a defendant has satisfied the first prong of the *Batson* analysis, a prosecutor must provide an explanation for her peremptory strikes "based on something other than the [gender] of the juror." *Id.* (quoting *Hernandez v. New York*, 500 U.S. 352, 360 (1991)). In reference to the only juror at issue here, the prosecutor told the court that she struck him from the panel because of a "feeling" that was the same feeling she

had previously experienced with that juror in an earlier voir dire.[2] She then proceeded to add that she "c[ouldn't] really recall [her] reasons on that one." While this explanation is clearly gender-neutral on its face, Petitioner maintains that it was actually a pretext for discrimination. In support of this argument, Petitioner points to evidence that the prosecutor had not actually struck that juror from the panel in the previous week's case. However, since we are foreclosed from considering this evidence, we are confined in our review to the appellate court's findings on Petitioner's other claims of pretext.[3]

Upon review of these findings, it is our opinion that the appellate court did not unreasonably apply federal law in holding that the prosecutor did not discriminate on the basis of gender in issuing the peremptory strike. In order to pass muster under *Batson*, a prosecutor's explanation "need not be persuasive, *nor even plausible*, but only [gender]-neutral and honest." *Williams*, 264 F.3d at 571 (emphasis added). Even if the prosecutor had been mistaken in believing that she had previously struck Juror Philip from another panel, that alone does not violate *Batson*. In addition to referencing the previous week's voir dire, the prosecutor also mentioned that she struck Juror Philip because of a "feeling" she had about him. We have previously held that "intuitive assumptions, inarticulable factors, or even hunches can all be proper bases for rejecting a

---

[2] The record indicates that some or all of the potential jurors had already gone through the voir dire process or had actually sat on another jury in the two weeks prior to Petitioner's trial.

[3] A federal court's review of a state court decision under §§ 2254(d)(1), (2) is limited to the record that was before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011); *see also Blue v. Thaler*, No. 10-70025, 2011 WL 6413668, at *2 (5th Cir. Dec. 22, 2011) (emphasizing that "*Pinholster* prohibits a federal court from using evidence that is introduced for the first time at a federal-court evidentiary hearing as the basis for concluding that a state court's adjudication is not entitled to deference under § 2254(d)."). Pursuant to this precedent, we are barred from considering Petitioner's appendices as they were not part of the state court record below and were offered as evidence for the first time in this appeal.

potential juror, even in the *Batson* context." *United States v. Turner*, 674 F.3d 420, 436 (5th Cir. 2012) (internal quotation marks omitted). Consequently, our precedent dictates that the prosecutor's "feeling" about Juror Philip is an independent, acceptable, gender-neutral explanation that does not violate *Batson*.

Where a prosecutor has offered reasonable, gender-neutral reasons for the challenged peremptory strike, the third prong of *Batson* requires the trial court to evaluate whether the defendant has shown purposeful discrimination on the part of the prosecutor. In order to assess whether the prosecutor exhibited a discriminatory intent, the trial court looks to "the persuasiveness and credibility of the prosecutor's justification for his exercise of the peremptory strike." *Moody*, 476 F.3d at 267. The resulting inquiry "is quintessentially a question of fact which turns heavily on demeanor and other issues not discernable from the cold record, such that deference to the trial court is highly warranted." *Williams*, 264 F.3d at 572. Thus, even if the prosecutor's justifications for striking the juror were not gender-neutral, Petitioner still must demonstrate that the appellate court erred in finding that the prosecutor did not purposefully discriminate against Juror Philip in violation of *Batson*'s third prong.

Petitioner insists that the trial court's decision to deny his *Batson* challenge is not entitled to deference since the trial court did not attempt to make a determination under the third prong of *Batson*. While we acknowledge that the trial court offered no reasoning under the third prong of its *Batson* analysis, we find that the appellate court's subsequent determination that the prosecutor's reasons for her peremptory strike were not discriminatory is sufficient to justify the outcome reached by both state courts. *See Splawn v. Texas*, 160 S.W.3d 103, 115 (Tex. Ct. App. 2005) ("The State gave reasons, and they were not reasons that are constitutionally prohibited. That is all that is required.").

No. 10-41087

Furthermore, the appellate court's finding on this prong of the *Batson* analysis is entitled to the same deference that we would accord a trial court's finding on this issue. Section 2254(d) "explicitly provides that a determination after a hearing on the merits of a factual issue, *made by a State court of competent jurisdiction . . .* shall be presumed to be correct." *Sumner v. Mata*, 455 U.S. 591, 592 (1982) (emphasis added) (quoting 28 U.S.C. § 2254(d)) (internal quotation marks omitted). The plain language of AEDPA thus compels deference to a state court determination on the merits of a *Batson* claim. In accordance with this interpretation of AEDPA, the Supreme Court has held that "the presumption of correctness [granted to state courts under AEDPA] is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." *Id.* at 592–93. Notwithstanding the trial court's failure to undertake a formal *Batson* analysis, the appellate court's decision is entitled to deference from this Court if that decision does not unreasonably apply federal law.

We reached the same conclusion on a similar set of facts in *Moody v. Quarterman*, 476 F.3d at 268. In *Moody*, we confronted a situation where the trial court erroneously determined that the defendant did not have standing to challenge the prosecutor's strike of a black juror and thus did not engage in any *Batson* analysis whatsoever. *Id.* at 263. On appeal, the Texas Court of Criminal Appeals affirmed the defendant's conviction and sentence, acknowledging that the trial court failed to conduct a proper *Batson* hearing, but nonetheless holding, based on its own findings of fact, that the prosecutor did not strike the juror because of his race. *Id.* at 264. In *Moody*, we held that deference was appropriate even where the state appellate court conducted the entire *Batson* analysis on its own. It is therefore not inconsonant to extend that same deference to the appellate court's decision in this case, where the appellate court

merely examined the trial court's record on the first and second prongs of the *Batson* analysis and reasoned that the third prong had also been satisfied.

It is worth noting that we are not at liberty to grant Petitioner's application for habeas relief simply because we would prefer a more detailed explanation of the appellate court's decision. As the Supreme Court stated in *Neal v. Puckett*:

> [W]e do not interpret AEDPA in such a way that would require a federal habeas court to [grant the writ] solely because it finds the state court's written opinion unsatisfactory . . . . [O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of the evidence.

286 F.3d 230, 246 (5th Cir. 2002). Although the appellate court did not leave us a lengthy record to evaluate, it did provide sufficient justification for the decision to deny Petitioner's *Batson* challenge. As a result, we hold that Petitioner has failed to demonstrate that the appellate court unreasonably applied federal law.

## CONCLUSION

Petitioner has failed to make a compelling case for habeas relief. The prosecutor offered gender-neutral explanations for her peremptory strike and exhibited no signs of purposeful discrimination against the male jurors. As AEDPA requires us to defer to state courts in situations where there has been no unreasonable application of a clearly established federal law, we hold that the state court's denial of Petitioner's *Batson* challenge is hereby AFFIRMED.